# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SHIRLEY A. LEWIS | § | PLAINTIFF |
| | § | |
| VS. | § | NO. 1:06CV1110-LG-JMR |
| | § | |
| DONALD C. WINTER, Secretary of the Navy | § § | DEFENDANT |

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Donald C. Winter, Secretary of the Navy's [17] Motion to Dismiss, or in the Alternative, for Summary Judgment. Plaintiff Shirley A. Lewis initiated this action alleging that she was not promoted because of her race. Winter argues that she cannot demonstrate pretext. Lewis did not file a response in opposition. The Court has considered the brief, the record, and the relevant legal authority. The motion is granted.

## FACTS AND PROCEDURAL HISTORY

From 1991 through 2002, Lewis was a secretary, grade six, with the Second Naval Construction Brigade Detachment in Gulfport, Mississippi. In August of 2002, this Detachment was disestablished. Instead, the Twenty-Second Naval Construction Regiment (NCR) was established. From this point forward, Lewis was employed as a secretary with this Regiment. Initially, she was the secretary to the equipment office, under the command of Captain Steve Fitzgerald, just as she had been in the prior Detachment.

In October, 2002, at the request of Captain William McKerall, she assumed duties of command secretary[1]. This was done without any documentation to officially move her

---

[1]There is a dispute of fact as to whether she assumed the full duties of command secretary. Viewed in the light most favorable to Lewis, the Court will assume that she did.

temporarily or permanently into this position. The command secretary position was a grade 7, promotable to grade 8. She also performed the duties of the secretary for the Administration Department, Operations Department, Equipment Office and Logistics Coordinator. As command secretary, she worked for McKerall (the Commodore and first in command) as well as for Commander Robyn Eastman (the Chief of Staff and second in command).

Command secretary was a newly created position, as was the Command itself. It is undisputed that while Lewis was serving this role, a hiring certification for this position was issued. Lewis maintains that she was nevertheless promised to be promoted into this position even though she knew that other candidates were being considered. A Department-of-Defense-wide search ensued. Interested candidates entered their resumes into RESUMEX, a database. Human Resources pulled out the top qualified candidates, based on these resumes. Eastman was then to select the command secretary from this selection. Katherine Dixon (the ultimate selectee) was not among this first selection presented to him. He narrowed the top two candidates down to Lewis and Susan Armstrong.

Eastman was then deployed to Iraq in November 2002. McKerall was deployed in January 2003, at which time the certification for the command secretary was cancelled. Captain Matt Thigpen and Fitzgerald filled in as acting Commodore and Chief of Staff until May or June of 2003.

In June of 2003, McKerall and Eastman returned. There was a change of command, and Captain Mark Handley became the Commodore, with Eastman still the Chief of Staff. Sometime subsequent to this, a second certification was issued for the position of command secretary, and the process repeated.

This time, Lewis was not in the top five choices. The first choice was Hortencia Greenstreet, an Hispanic woman who was command secretary to the Commodore of the Pascagoula Naval station. She did not accept the job, however. The second choice was Lottie Lusk, a Caucasian woman who was an experienced command secretary located in Georgia. She declined the position as well. The third candidate was Dixon, a Caucasian woman who was the secretary for a training officer in the Twentieth NCR, located on the same base as the Twenty-Second. According to Eastman, she:

> was an executive [command] secretary[2] at a job before she got that one. She was an executive secretary at a job in this building, called the Third Naval Construction [Reserve] Regiment. An exact same command like ours, and was working for a Captain of a command of 1600 people. She was an executive secretary here, she then took a job as a secretary to the training officer across the street because their command closed. The Reserve regiment moved to North Carolina. . . . [S]he's a Gulfport native. She stayed in Gulfport and took the job across the street.

(EEOC Tr. at 48.). "[S]he also had skills in Power Point and Excel." *Id.* at 24. Eastman defined executive secretary as "the secretary to a large command that had an O-6 as a commanding officer. . . . a command of 200 to 2000 is what I consider an executive secretary" *Id.* at 27, 30. Dixon accepted the command secretary position for the Twenty-Second NCR in late September 2003.

Lewis found out from Human Resources that she was not selected for the promotion. She timely filed a charge with the Equal Employment Opportunity Commission. After a hearing, the EEOC issued a Right to Sue letter. Lewis timely filed in the instant lawsuit.

---

[2]There is a dispute of fact as to how long Dixon held the prior command secretary position. Eastman testified it was four years. Her resume indicates it was one year.

# DISCUSSION

STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:

Because the Court was presented and has considered matters outside the pleadings, the Court converts the motion to a motion for summary judgment. FED. R. CIV. P. 12(d). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Winter concedes that Lewis has met her prima facie case of race discrimination in the failure to promote her. He argues that she cannot rebut the non-discriminatory reason for not promoting her.

Once the plaintiff satisfies her prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973). If the defendant does so, the burden is shifted back to the plaintiff to rebut the defendant's explanation. *Id.* at 804. The non-discriminatory reasons proffered is that Lewis was not the best candidate for the position. Her Power Point and Excel skills were poor, and Dixon had prior experience as a Command Secretary and with Power Point and Excel.

Now, the burden shifts to Lewis to rebut this explanation. Particularly, she must show (1) the reason is false or unworthy of credence, or (2) that she is clearly better qualified than Dixon. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

Lewis concedes that there was "very little" difference between her and Dixon's resumes and that they "both had the same skills." (Pl.'s Dep. at 32, 41-42). She says only that "Mrs. Dixon *was no more qualified* . . . because she had some things that were blatant errors in the correspondence." *Id.* at 22 (emphasis added). Of course, this did not occur until after Dixon was promoted.

It remains then for Lewis to prove that the proffered explanation for her non-promotion is false or unworthy of credence. Pretext may be proven by an employer's inconsistent explanations of its legitimate nondiscriminatory reason. *Burrell*, 482 F.3d at 415. Proof of pretext cannot rest on "statements by nondecision-makers or statements by decisionmakers unrelated to the decisional process itself." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989). For example, the Fifth Circuit reversed a verdict for an employee where the only evidence of pretext was a comment that "There are different standards for males and females." *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 254 (5th Cir. 1999). It was insufficient evidence of gender discrimination, because it was made by a non-decision maker two years before the denial of tenure. *Id.* at 256.

5

There is no evidence of inconsistent explanations for the decision. There are no statements by the decision maker indicating that there was racial discrimination. Lewis alleges the talk around the base was that Dixon did not know why Lewis's "black self" should get the promotion. (Pl.'s Dep. at 41). This is insufficient proof because Dixon was not the decision maker; she was a co-worker. Lewis also testified that Jennifer Williams, an African American in human resources, said, "You know they're not going to want any two black women on those top two positions on this base." *Id.* at 55. Again, Williams was not the decision maker, and there is no foundation for her statement.

Finally, Lewis says that she held the temporary position for nearly a year without any negative feedback about her Power Point and Excel skills and that she had received a superior performance award during this time. However, she admits that at one point the Power Point responsibilities were taken from her and given to someone else.

All employees at the base received a superior performance award on or about June 30, 2003. This was a cash award. Lewis's cash award was the highest of anyone's. This award was given for her part in deploying hundreds of people to Iraq from the base. This included making travel arrangements and issuing orders. There is evidence that she was considered excellent when it came to travel arrangements, which included this deployment, for which she was awarded. This award, however, does not make it any more or less likely that she was not skilled in Power Point. It was not implicated in her travel and deployment skills.

Because there is no evidence of pretext, Winter is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, Defendant's [17] Motion to Dismiss, or in the Alternative, for Summary Judgment is

**GRANTED.** A separate judgment will be entered herein in accordance with this Order as required by FED. R. CIV. P. 58.

**SO ORDERED AND ADJUDGED** this the 17th day of December, 2008.

            s/ *Louis Guirola, Jr.*
            LOUIS GUIROLA, JR.
            UNITED STATES DISTRICT JUDGE